## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY D. JUSTICE, II, | : |
| | :    Case No. _____ |
|      Plaintiff, | : |
| | :    <u>JURY TRIAL DEMANDED</u> |
|      v. | : |
| | :    **COMPLAINT FOR VIOLATION OF THE** |
| VEONEER, INC., JAN CARLSON, | :    **<u>SECURITIES EXCHANGE ACT OF 1934</u>** |
| ROBERT W. ALSPAUGH, MARY LOUISE | : |
| CUMMINGS, MARK DURCAN, JAMES M. | : |
| RINGLER, KAZUHIKO SAKAMOTO, | : |
| JONAS SYNNERGREN, and WOLFGANG | : |
| ZIEBART, | : |
| | : |
|      Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1.       On July 22, 2021, Veoneer, Inc. ("Veoneer" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Magna International Inc. ("Parent') and 2486345 Delaware Corporation ("Acquisition Sub," and together with Parent, "Magna") (the "Proposed Merger").

2.       Under the terms of the Merger Agreement, Veoneer's stockholders will receive $31.25 in cash per share.

3.       On September 9, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.       As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is and has been continuously throughout all relevant times the owner of Veoneer common stock.

9.     Defendant Veoneer is a Delaware corporation. Veoneer's common stock is traded on the New York Stock Exchange under the ticker symbol "VNE."

10.     Defendant Jan Carlson is Chairman of the Board of Directors of Veoneer (the "Board").

11.     Defendant Robert W. Alspaugh is a member of the Board.

12.     Defendant Mary Louise Cummings is a member of the Board.

13.     Defendant Mark Durcan is a member of the Board.

14.     Defendant James M. Ringler is a member of the Board.

15.     Defendant Kazuhiko Sakamoto is a member of the Board.

16.     Defendant Jonas Synnergren is a member of the Board.

17.     Defendant Wolgang Ziebart is a member of the Board.

18.     Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19.     Veoneer is a worldwide leader in automotive technology.

20.     On July 22, 2021, Veoneer entered into the Merger Agreement.

21.     The press release announcing the Proposed Merger provides as follows:

Magna International Inc. (TSX: MG; NYSE: MGA) and Veoneer (NYSE: VNE; SSE: VNE SDB) today announced that they have entered into a definitive merger agreement under which Magna will acquire Veoneer, a leader in automotive safety technology. Pursuant to the agreement, Magna will acquire all of the issued and outstanding shares of Veoneer for $31.25 per share in cash, representing an equity value of $3.8 billion, and an enterprise value of $3.3 billion, inclusive of Veoneer's cash, net of debt and other debt-like items as of March 31, 2021.

The acquisition builds on Magna's strengths and positions the company's advanced driver assistance systems ("ADAS") business as a global leader with comprehensive capabilities. The acquisition also expands Magna's ADAS business with major customers and provides access to new customers and regions, including in Asia. Magna expects to operate Veoneer's Arriver$^{TM}$ sensor perception and drive policy software platform as an independent business unit, consistent with Veoneer's current practice. In addition, Magna will acquire Veoneer's leading global position in restraint control systems.

"Veoneer's complementary technology offerings, customer base, and geographic footprint make it an excellent fit with our ADAS business, and the acquisition strengthens our global engineering and software development talent base," said Magna CEO Swamy Kotagiri. "We expect the combined entity to be an industry leader in active safety solutions, to enhance its position in complete ADAS systems, and to be well-positioned for the transition towards higher levels of autonomy. The acquisition is also consistent with our go-forward strategy to accelerate investment in high-growth areas."

Following the closing of the transaction, Veoneer will be combined with Magna's existing ADAS business and integrated into Magna's electronics operating unit. The combined business will build upon relationships with both organizations'

automotive customers, suppliers and technology partners to develop best-in-class products.

Jan Carlson, Veoneer's Chairman, President & CEO said: "This is a compelling transaction for all stakeholders. It will deliver significant and immediate value to Veoneer stockholders through an attractive premium to our trading price, and provide new opportunities for our employees to join one of the most capable suppliers in the mobility space. In addition, combining forces with Magna will allow the combined business to elevate its status as a full-systems ADAS supplier, which should benefit our customers, supplier partners and ultimately consumers."

Mr. Kotagiri added, "We have a great deal of respect for Veoneer's team around the world and their culture of innovation and creativity. We look forward to welcoming Veoneer's employees into our global Magna family and are confident that together we will be able to achieve great results and move faster to address the growing ADAS market."

Transaction Highlights

- Creates a global leader in ADAS with pro forma 2020 ADAS sales of $1.2 billion and capabilities across:
    - Key component categories, including camera, radar, LiDAR and domain controllers; and
    - Software features/functions, including perception and drive policy.
- Enhances Magna's ADAS systems capabilities and adds significant engineering and software competency, including ArriverTM sensor perception and drive policy software.
- The complementary nature of the two businesses is expected to result in greater ADAS content per vehicle for Magna driven by the opportunity to offer more complete and integrated ADAS systems, inclusive of software.
- Strengthens Magna's customer and geographic diversification in ADAS. The combined entity will have a well-diversified customer base. In addition, Veoneer's business and footprint in Asia builds on Magna's customer and geographic bases in this important region.
- Expect to realize annual run-rate synergies of approximately $100 million by 2024. These savings are incremental to Veoneer's previously announced market adjustment initiatives.
- The all-cash transaction will allow Magna to maintain a strong balance sheet with an expected adjusted debt to adjusted EBITDA ratio slightly above the high end of Magna's 1.0 to 1.5 target range at closing.

Transaction Details and Timing

The transaction has been unanimously approved by the Veoneer and Magna boards of directors, and Veoneer's board of directors unanimously recommends that Veoneer stockholders approve the proposed merger and merger agreement. In

addition, Veoneer stockholders AMF, Cevian, AP4 and Alecta, which collectively represent approximately 40% of Veoneer's outstanding shares of common stock, have either entered into support agreements with Magna or provided indications of support, pursuant to which they have agreed, among other things and subject to certain conditions, to vote their shares of Veoneer common stock in favor of the transaction. A special meeting of Veoneer's stockholders will be convened in connection with the transaction as soon as practicable after the mailing to Veoneer's stockholders of the proxy statement in connection with the merger. The transaction is expected to close near the end of 2021, subject to the approval of Veoneer's stockholders, certain regulatory approvals and other customary closing conditions. The transaction is not subject to any financing conditions.

Advisors

Citi serves as financial advisor and Sidley Austin LLP serves as legal counsel to Magna. Rothschild & Co and Morgan Stanley serve as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP serves as legal counsel to Veoneer.

22.     On September 9, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

23.     The Proxy fails to disclose material information regarding Veoneer's financial projections.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

24.     The Proxy fails to disclose the line items used to calculate Veoneer's financial projections.

Financial Analyses

25.     The Proxy fails to disclose material information regarding the financial analyses conducted by Rothschild & Co. ("Rothschild") and Morgan Stanley.   When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used

5

to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

26.     Regarding Morgan Stanley's Public Trading Comparables Analysis, the Proxy fails to disclose the individual multiples for the companies.

27.     Regarding Morgan Stanley's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates; and (iii) the line items used to calculate free cash flow.

28.     Regarding Morgan Stanley's Precedent Transactions Multiples Analysis, the Proxy fails to disclose the individual multiples for the transactions.

29.     Regarding Morgan Stanley's Equity Research Analysts' Future Price Targets analysis, the Proxy fails to disclose: (i) the price targets; and (ii) the sources of the price targets.

30.     Regarding Rothschild's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates; (iii) the line items used to calculate projected cash flows; (iv) net debt; and (v) the number of fully-diluted shares outstanding of Veoneer.

31.     Regarding Rothschild's selected equity analyst per share target prices analysis, the Proxy fails to disclose: (i) the price targets; and (ii) the sources of the price targets.

32.      Regarding Rothschild's premiums paid analysis, the Proxy fails to disclose: (i) the transactions; and (ii) the premia paid in the transactions.

<u>Morgan Stanley</u>

33.     The Proxy fails to disclose the timing and details of the prior services Morgan Stanley conducted for Veoneer.

34.     The Proxy fails to disclose the timing and details of the prior services Morgan Stanley provided to Parent, and fees received by Morgan Stanley for providing those services.

## COUNT I

**Claim Against the Individual Defendants and Veoneer for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

35.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

36.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

37.     Veoneer is liable as the issuer of these statements.

38.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

39.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

41.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

42.     The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

43.     Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

44.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

45.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein.

47.     Due to their positions as officers and/or directors of Veoneer and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

50.     The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the Proxy.

51.    Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

52.    The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

53.    These defendants are liable pursuant to Section 20(a) of the Exchange Act.

54.    Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.    In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  September 27, 2021

**GRABAR LAW OFFICE**

By: _____

Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*